JUDD *v.* CLAREMONT.

Whether there should be a change of the endorsers of a writ, is a question to be settled at the trial term.

Evidence that a horse driven by a highway traveller had previously stumbled, is competent in an action for damages from a defective highway, without proof that the fact was brought to his knowledge, when it also appears that he had opportunities for becoming informed as to the suitableness of the horse.

Statements by a witness inconsistent with his testimony upon material matters may be proved against him.

The liability of a town to a highway traveller is not affected by c. 101, s. 1, Laws 1887.

A town is not liable to a traveller injured while travelling on a highway, if the accident was not caused by the defect complained of.

The fact that a juror believes a statute is unwise or inexpedient does not render him unindifferent, provided it appears that in rendering a verdict he will be guided by the law.

SMITH, J. 1. When this action was commenced the plaintiff was a resident of Vermont, the writ being indorsed by a resident of this state. At the opening of the trial, the plaintiff, who had become a resident of this state, moved to strike off the name of the endorser. This motion presents no question of law. Whether there should be a change of endorsers is a question of what justice requires, and will be settled at the trial term.

2. The plaintiff seeks to recover damages for injuries from a defective highway. The alleged defect was a depression in the centre of the highway, in which were some fast stones uncovered, and some loose stones. The horse with which she was travelling stepped upon a loose stone and partially fell. The plaintiff was thereby thrown from her carriage and injured. Two witnesses testified, subject to exception, that upon a previous occasion they saw the horse stumble. No evidence was introduced to show that this fact was brought to the plaintiff's knowledge. The evidence was competent on the question whether she was driving a suitable horse. Whether she used ordinary care to provide herself with a suitable horse is another question. The facts that the horse had been owned by her husband seven years, and that she had driven him a good deal, afforded evidence from which the jury might find that if the horse was not a suitable one she had opportunities for becoming informed of the fact.

3. A witness named Thomas, who first found the plaintiff after the accident, described when and how he found her. The defendants called one Rossiter, who testified that he was at the place of the accident with Thomas a few days after it occurred, and that Thomas pointed out where he found the plaintiff. This evidence was competent, because it tended to contradict Thomas.

4. The plaintiff's husband testified to finding a good many loose stones and fast points of ledges in the highway. A witness named Swain testified that she was at the place of the accident with him soon after it occurred, and said to him, "There are no stones in the road," and that he made no reply. This evidence was competent, because it tended to contradict Mr. Judd. His silence was inconsistent with his testimony at the trial.

5. The plaintiff requested the court to charge "that it was the duty of the officers of Claremont, in the month of June, 1888, to cause all loose obstructions to travel to be removed from this hill where the accident happened," as required by Laws 1887, *c.* 101, *s.* 1; also, "that if a stone obstructed the travel upon this road at the time and place of this accident, and the accident would not have occurred had the road been reasonably smooth and free from loose or tight stone, then the town is liable, if the plaintiff was in the exercise of ordinary care in driving the horse in question with her then knowledge of the horse and characteristics, if any he had." The defendants' liability was not affected by the act of 1887, and there was no error in the refusal to give the instructions requested upon that act. As to the subject-matter covered by the rest of the request, the jury were properly instructed, and no exceptions were taken to the instructions.

6. The court charged the jury, among other things, as follows: "No matter if the road was defective, if the defect did not contribute to the injury, or if it is not more probable than otherwise that it so contributed, the town is not liable; and in this view it is

of no consequence whether Mrs. Judd knew the horse to be a stumbling horse or not." The plaintiff's exception to this instruction cannot stand. If the defect did not contribute to the accident, the town is not liable.

7. The jury returned a verdict for the defendants, which the plaintiff moved to set aside because Dodge, one of the jurors, was not indifferent. It appeared that in 1890, while acting as selectman of Croydon, he refused to settle a claim against his town for damages to a traveller from a rolling stone, because, as he said, he did not think the law required towns to pay damages caused by rolling stones, but if it did, it ought to be repealed; and that he thought Vermont had the best law, which was to let people drive at their own risk. The fact that the juror doubted the wisdom or expediency of the law did not render him unindifferent, provided he would be governed by the law of the case as laid down by the court; and that he was willing to be thus guided in his action sufficiently appears. *State* v. *Howard,* 17 N. H. 171; *State* v. *Pike,* 20 N. H. 344; *State* v. *Ayer,* 23 N. H. 301.

*Exceptions overruled.*

DOE, C. J., was absent: BINGHAM, J., did not sit: the others concurred.

*G. A. Davis* (of Vermont) and *E. D. Baker,* for the plaintiff.

*I. Colby* and *H. W. Parker,* for the defendants.