NORMANDIN, APPELLANT, *v.* PAYNE, DIRECTOR-GENERAL OF RAILROADS, RESPONDENT.

(No. 4,963.)

(Submitted January 3, 1923. Decided January 22, 1923.)

[212 Pac. 285.]

*Automobiles—Railroad Crossing Accident—Contributory Negligence—Evidence.*

Automobiles—Duty of Traveler Approaching Railroad Crossing—Contributory Negligence.

1. A person approaching a railroad crossing must take all reasonable precaution to assure himself by actual observation that there is no danger from an approaching train, the failure of the trainmen to keep a lookout and to give warning signals not relieving him from the necessity of making a vigilant use of his senses to ascertain whether it is safe to proceed, and if he fails to do so and suffers injury he is guilty of contributory negligence.

Same—Railroad Crossing—Failure of Traveler to Exercise Due Care—Contributory Negligence—Evidence.

2. Evidence in an action for damages suffered by the destruction of an automobile in a collision with an engine at a road crossing, *held* to show that its driver in approaching the crossing did not have the machine under control and though her view of the track for half a mile from the direction in which the train was coming was unobstructed did not exercise that degree of care required of a traveler under like circumstances, rendering her guilty of contributory negligence and warranting a directed verdict in favor of defendant railway company.

---

1. Care required of driver of automobile at railroad crossings, see notes in 1 A. L. R. 203; 21 L. R. A. (n. s.) 794; 29 L. R. A. (n. s.) 924; 46 L. R. A. (n. s.) 705.

2. Automobile accidents at railroad crossings, see notes in Ann. Cas. 1913B, 680; Ann. Cas. 1915B, 767; Ann. Cas. 1916B, 166.

*Appeals from District Corut, Powell County; Geo. B. Winston, Judge.*

ACTION by Pat Normandin against John Barton Payne, as Director-General of Railroads. From a judgment for defendant and an order denying a new trial plaintiff appeals. Affirmed.

*Mr. W. E. Keeley,* for Appellant, submitted a brief and argued the cause orally.

The court erred in not submitting the case to the jury. (*Everett* v. *Hines,* 64 Mont. 244, 208 Pac. 1063; *Chung Sing* v. *Southern Pac. Co.,* 182 Cal. 609, 189 Pac. 281; *Missouri K. & T. R. Co.* v. *Stanton,* 78 Okl. 167, 189 Pac. 753; *Cain* v. *Davis* (Cal. App.), 203 Pac. 807; *Colorado & Southern Ry. Co.* v. *Ford,* 70 Colo. 408, 201 Pac. 892; *Swanson* v. *Puget Sound Elec. R. R. Co.* (Wash.), 202 Pac. 264; *Kessler* v. *Davis,* 111 Kan. 515, 207 Pac. 799; *Shipley* v. *Nelson* (Wash.), 207 Pac. 1046.)

The latter portion of section 1, Chapter 151, Session Laws of 1919, relied upon by defendant, is void. The *proviso* or rider has absolutely nothing in common with, or to do with, the first part of the section, or for that matter, with any of the rest of the Act, and is clearly unconstitutional. (Sec. 23, Art. V, Const.; *Jobb* v. *Meagher,* 20 Mont. 424, 51 Pac. 1034; *Russell* v. *Chicago etc. Ry. Co.,* 37 Mont. 1, 94 Pac. 488; *State ex rel. Holliday* v. *O'Leary,* 43 Mont. 157, 115 Pac. 204; *State ex rel. Cotter* v. *District Court,* 49 Mont. 146, 140 Pac. 732.)

*Mr. S. P. Wilson* and *Messrs. Gunn, Rasch & Hall,* for Respondent, submitted a brief; *Mr. Carl Rasch* argued the cause orally.

Mrs. Normandin was guilty of such contributory negligence as to preclude a recovery as a matter of law. (*Rayhill* v. *Southern Pac. Co.,* 35 Cal. App. 231, 169 Pac. 718; *Hines* v. *Cooper,* 204 Ala. 535, 86 South. 396; *Swearingen* v. *United*

[65 Mont. 543.]

*States R. R. Admr.,* 191 Iowa, 1096, 183 N. W. 320; *Keith* v. *Great Northern Ry. Co.,* 60 Mont. 505, 199 Pac. 718; *George* v. *Northern Pac. Ry. Co.,* 59 Mont. 162, 196 Pac. 869; *Mc-Auliffe* v. *New York Cent. & H. R. R. Co.,* 83 N. Y. Supp. 200, 85 App. Div. 187; *Born* v. *Philadelphia & R. R. Co.,* 198 Pa. 409, 48 Atl. 263; *Green* v. *Los Angeles etc. Ry. Co.,* 143 Cal. 31, 76 Pac. 719; *Chicago etc. Ry. Co.* v. *Wheelbarger,* 75 Kan. 811, 88 Pac. 531; *Sohl* v. *Chicago etc. Ry. Co.,* 183 Iowa, 616, 167 N. W. 529; *Woolf* v. *Washington etc. Ry. Co.,* 37 Wash. 491, 79 Pac. 997; *Bahlert* v. *Chicago etc. Ry. Co.,* 175 Wis. 481, 185 N. W. 515.)

It is insisted that the statute (Chap. 151, Laws 1919) is un-constitutional because violative of section 23, Article V of the Montana Constitution. But the Act was one for the safety of travelers at railroad crossings, and any provision tending to effectuate that purpose could be legally incorporated in the Act as a provision thereof. (25 Ruling Case Law, 843; *State* v. *Anaconda C. M. Co.,* 23 Mont. 498, 59 Pac. 894; *Tadlock* v. *Eccles.* 20 Tex. 782, 73 Am. Dec. 213; *Clendaniel* v. *Conrad,* 3 Boyce (Del.), 549, Ann. Cas. 1915B, 968, 83 Atl. 1036; *Montclair* v. *Ramsdell,* 107 U. S. 147, 27 L. Ed. 431, 2 Sup. Ct. Rep. 391 [see, also, Rose's U. S. Notes].)

MR. JUSTICE COOPER delivered the opinion of the court.

Action to recover damages for injuries done to an automobile. While Mrs. Normandin, the wife of the plaintiff, was driving the plaintiff's car on the highway which crosses the track of the defendant a mile south of the station of Deer Lodge, she became confused at the approach of a train, lost control of the machine, and allowed it to run upon the track, where it was struck by the train and demolished. The track between the points named is paralleled by the highway upon which the car was being driven. The track is high enough to be seen practically all the way by drivers of vehicles traversing the highway. As the road turns abruptly to the west to make the crossing, there is a high point which affords the traveler a

clear view of the track in the direction of the station of Deer Lodge as far as the section-house—a distance of half a mile from the crossing. After both parties had rested, the court sustained defendant's motion for a verdict in its favor. From the judgment entered upon the directed verdict, and from an order denying a new trial, the plaintiff has appealed.

The following facts are not disputed in the evidence: Mrs. Normandin left the city of Deer Lodge for her home alone, at about 7 o'clock on the evening of September 13, 1919. From a point not far from the section-house she was observed by the fireman, all the way to the crossing. After rounding the curve leading across the track, the fireman testified the machine "graduated its speed from fifteen miles an hour to nothing," and finally came to a stop on the track. Although she stated that she listened but did not hear the bell or whistle sounded, the engineer testified that he blew the whistle once near the section-house, a distance of three-fourths of a mile or a mile north of the crossing, and again at the whistling-post, which was approximately 880 feet therefrom. The automatic bell upon the engine was found to be ringing after the accident, and continued to ring until it was shut off by the fireman at the instance of the engineer.

John A. Campbell, testifying for the plaintiff, stated that he had worked seven years in the car department of the Milwaukee Railway Company, and since leaving that service had lived four years upon his farm a quarter of a mile from the crossing at which the accident happened; that while he was carrying some hay in his farmyard, he heard the engine whistle, heard the noise caused by the collision, and saw the train; that, in his best judgment, fifteen to twenty seconds elapsed between the whistling and the noise caused by the impact; that between the two noises he had not walked "over thirty feet at the outside."

On being called by the plaintiff, the engineer testified that it would take from a mile to a mile and a half "from a stop" to attain a speed of forty-five miles, the speed at which he estimated the train was traveling, and from three to four min-

utes to cover the distance between the two points; that he was allowed to travel sixty miles per hour, at that point.

Mrs. Normandin testified substantially as follows: For a period of three years before the accident she had driven a car over the road and crossing in question two or three times a week, and sometimes oftener, and was familiar with "every inch of it"; that on the day of the accident the brakes of the machine were in perfect working order; that she kept glancing back "through the isinglass" as she ran along, and just before reaching the curve "slowed down and looked around and listened for a bell or a whistle"; that she knew the train was late, but thought it must have gone by; that there was a sharp curve and then an embankment on the side "where you have to watch the car pretty close"; that she there "slowed down almost to a standstill," and after rounding the curve "speeded up just a little bit to make the incline," and just when she "could see the track" she saw the train coming; that she "was not a good judge of distances," but when she first saw the train coming "it must have been about fifteen feet" from the crossing; that she did not look at the speedometer, but she was "going just slow enough to make the incline without changing gears, that is, make it in high." On crossexamination she testified: "It was on the high point that I looked back and slowed down. When I didn't notice any train I kept on going down to the turn, made the turn, and after I had made the turn and felt that I could safely take my mind off the car, I saw the train. Then I was within fifteen feet of the track. That is what I estimate it. * * * I could not tell exactly." Describing the physical conditions, she states that there were "no obstructions at all in the direction of Deer Lodge for at least half a mile, only the section-house," which was "quite close to Deer Lodge," and that the only thing that would impede or obstruct the view would be "a little bit of tall grass."

Does the evidence raise a presumption that the plaintiff was [1] not in the exercise of due care when she attempted to make the crossing? "Every person is bound to an absolute

duty to exercise his [or her] intelligence to discover and avoid dangers that may threaten him." (*Sherris* v. *Northern Pac. Ry. Co.,* 55 Mont. 189, 175 Pac. 269.) A person approaching a railroad crossing is required to take all reasonable precaution to assure himself by actual observation that there is no danger from an approaching train. The failure of the persons in charge of the train to keep a lookout and to give warning signals of its approach to the crossing does not relieve the traveler from the necessity of making a vigilant use of his senses to ascertain whether it is safe to proceed. (*Railroad Co.* v. *Houston,* 95 U. S. 697, 24 L. Ed. 542 [see, also, Rose's U. S. Notes]; *Hunter* v. *Montana Cent. Ry. Co.,* 22 Mont. 525, 57 Pac. 140.) It is not always sufficient if he does look and listen. The obligation resting upon him is to exercise care to make the act of looking and listening reasonably effective. (*Sprague* v. *Northern Pac. Ry. Co.,* 40 Mont. 481, 107 Pac. 412.) If he goes upon the crossing without taking this precaution, he is guilty of contributory negligence. (*George* v. *Northern Pac. Ry. Co.,* 59 Mont. 162, 196 Pac. 869; *Keith* v. *Great Northern Ry. Co.,* 60 Mont. 505, 199 Pac. 718.)

Applying the law thus stated to the actions of Mrs. Normandin, how can she escape the imputation that she was [2] so careless in the management of the automobile as to prevent recovery? For half a mile from the place of the accident in the direction of the station from which the train was coming her view was unobstructed, except for the "few blades of grass," which she does not claim prevented her from seeing the train. That she did not have her machine under control is quite evident from the fact that after she jumped it continued on until it stopped for lack of momentum between the rails.

Counsel for plaintiff question the constitutionality of a portion of section 1 of Chapter 151 of the Session Laws of 1919 (secs. 3842–3846, Rev. Codes 1921) upon the ground that the title is not ample enough to embrace the provision respecting the care to be exercised by travelers approaching railroad crossings where the view is obscured. Without deciding a question

not necessary to be determined in this instance, it is clear that the portion of the section referred to does no more than to declare the substance of the common-law rule as understood and uniformly applied by this court in the decisions referred to and numerous others not necessary to cite.

*Everett* v. *Hines,* 64 Mont. 244, 208 Pac. 1063,° is relied upon to support plaintiff's argument that Mrs. Normandin was not guilty of contributory negligence. The accident in that case happened within the corporate limits of a city, and was due to the negligence of the railway company in leaving a large gondola car upon the crossing, so obstructing the view that the plaintiff, although in the exercise of due care, was unable to avoid the injury.

Under the conditions shown in this record, it was incumbent upon the wife of plaintiff to look and listen attentively before attempting to cross the track, and to do so when near enough to determine whether there was danger in proceeding farther, Having failed to observe this precaution, she was guilty of contributory negligence.

The judgment and order appealed from are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES HOLLOWAY, STARK and GALEN concur.